WILLIAM T. FAMBROUGH, plaintiff in error, *vs* THOMAS AMIS, for use, defendant in error.

1. When a tract of land is divided by the line of the county in which the defendant in execution resides, the whole tract can be levied upon and sold, as his property, by the sheriff of that county, but not by the sheriff of the adjoining county.
2. When, on the trial of a claim case involving land divided by a county line, it appears from the plaintiff's evidence that, by reason of the defendant's residence in the other county, the levy and all the subsequent proceedings have been, and are, in the wrong jurisdiction, the court should, on motion of the claimant, order the levy dismissed; or if the fact of such residence is not made to appear by the plaintiff's evidence, but does appear from evidence introduced by the claimant, the verdict of the jury ought to be in favor of the claimant.

Levy and Sale.   Sheriff.   Claim.   Practice in the Superior Court.   Before Judge POTTLE.   Oglethorpe Superior Court.   April Term, 1876.

On January 7th, 1875, an execution in favor of Thomas Amis, for use, against Pendleton S. Fambrough, was levied by the sheriff of Oglethorpe county upon a tract of land situated partly in the said county, and partly in the county of Clarke.   A claim was interposed by William T. Fambrough.

The evidence showed clearly that the defendant resided in the latter county.   The jury found the property subject.

The claimant moved for a new trial because the court erred in refusing to dismiss the levy when it appeared from the evidence of plaintiff in *fi. fa.* that the defendant resided in the county of Clarke, and in charging that the superior court of Oglethorpe county had jurisdiction of the case.

The motion was overruled, and the claimant excepted.

The evidence, so far as material, is stated in the opinion.

J. D. MATHEWS; POPE BARROW, for plaintiff in error.

SAM. LUMPKIN; JOHN C. REED; J. T. OLIVE, for defendant.

BLECKLEY, Judge.

1. Where land subject to levy lies partly in two counties, and the defendant's residence is in one of them, the sheriff of that county may seize and sell the whole tract.  This is the true meaning of section 3644 of the Code, in so far as it applies to such a case.  The section expressly authorizes the sale to be made in that county.  By whom?  Of course, by the officer empowered by law to make sales of land there under legal process generally.  It follows, also, we think, that the sheriff of the other county cannot make the levy.  There is no provision of law for transmitting an execution from the one sheriff to the other, after the levy is entered, for the purpose of having the sale effected.  And no such provision is needed.  There is no reason for having both sheriffs to act, where the action of one of them would be quite sufficient.  All that the creditor has to do, is to pass by the sheriff that cannot sell, and put his process in the hands of the one that can sell.  The latter has the same power over the whole tract as if the tract lay entirely within his own county.  He can levy upon it, as well as sell it.  The other sheriff can do neither.  If the defendant in execution did not reside in either of the two counties, then the sheriff of either county could both levy and sell. It is the defendant's residence in one of the counties that creates the restriction.  The section of the Code referred to reads thus:  " A sheriff or other levying officer, shall not sell land out of the county in which he is sheriff, or such officer, except when the defendant in execution shall own a tract or tracts of land divided by the line of the county of his residence, in which case it may be sold in the county of his residence;  or if such tract of land is in other than that of the defendant's residence, it may be levied on and sold in either county."

2. The levy was made by the sheriff of Oglethorpe.  Had the defendant resided in that county, or in neither county, this levy would have been authorized by law.  On the face

of the levy, there was no objection to it; for it disclosed nothing as to the locality of the defendant's residence. The claim was properly interposed, and was returned to the proper court—the superior court of Oglethorpe. Not until evidence was introduced on the trial of the claim, did it appear that the defendant resided in Clarke. That fact was left in some doubt by the plaintiff's evidence, and, therefore, we do not hold that the court erred in not dismissing the levy on the claimant's motion. But the doubt was cleared up by the claimant's evidence, and for that reason the verdict should have been for the claimant. The court erred in giving any instructions which either assumed Oglethorpe to be the proper county for the levy to be made in, or left the jury free to find for the plaintiff, if they believed, under the evidence, that the defendant resided in Clarke. As against the levy on trial, the claimant was entitled to a verdict, for the reason that the sheriff of Oglethorpe had no power to make the levy if the defendant's residence was in Clarke.

It was suggested in argument, that the levy was good as to so much of the tract as lay in Oglethorpe. But we think otherwise. The levy was one and indivisible. There was no attempt by the sheriff to levy on less than the whole tract, nor was there any description of the part lying in Oglethorpe, as a distinct parcel. There is little or no doubt but that the sheriff had the power to levy on that part of the tract lying in Oglethorpe, but he did not do it. He levied on the whole.

The other questions made in the record are swallowed up in what has been decided. On the facts of the case, there could have been no legal verdict against the claimant.

Judgment reversed.