## WEST *et al. v.* McWHORTER.

1. Where a homestead was applied for on December 4, 1877, and the return of the county surveyor laying off the homestead was made on December 14, 1877, the ordinary was without authority of law to approve the homestead on December 15, 1877. A homestead thus approved was illegal and void.

(*a*) Consequently, where the land so set apart is levied upon and sold by a sheriff under a valid execution, the purchaser at the sale thereunder would get a good title.

(*b*) It follows that after the death .of the applicant for a homestead and his wife, and the arrival at age of the minor beneficiaries of the homestead estate, the heirs at law of the former can not recover the land from the purchaser at sheriff's sale, on the ground that the sale of the homestead property was void.

2. The court did not err in directing a verdict for the defendant.

APRIL 23, 1914.

Equitable petition. Before Joseph E. Pottle, judge pro hac vice. Greene superior court. January 28, 1913.

The petition of Joseph B. West and others against W. P. McWhorter showed substantially the following facts: Petitioners are the children and heirs at law of John J. West, who died intestate in May, 1899. On January 1, 1874, John J. West owned 115 acres of land in Greene county, Georgia, the subject-matter of this suit. On the last-mentioned date he executed a warranty deed to the land to W. P. McWhorter, to secure a debt of $610, which deed remains of record and uncanceled. On December 4, 1877, John J. West made application to the ordinary of Greene county for a homestead in the 115 acres of land, for the benefit of his wife, Elvira B. West, and his minor children, under the constitution of 1868. On December 14, 1877, the county surveyor of Greene county made his return, which was approved on December 15, 1877, by the ordinary of Greene county. On December 9, 1878, John J. West and his wife Elvira executed to the defendant their three promissory notes, approximating $250 each, and due November 1, 1879, two of the notes stipulating that they were given for part of balance due on the land debt made in 1874. Judgment was obtained on these notes in May, 1882, and the executions issued thereon were levied on the land in dispute, which was sold thereunder on June 6, 1882, McWhorter being the purchaser for the sum of $400. The sheriff executed and delivered to him an instrument purporting to convey the land to him, which, together with the executions, was recorded in the clerk's office: Mrs. Elvira B. West died intestate in May, 1899, owing no debts. McWhorter had gone into possession of the land sometime prior to the death of Mrs. West, and after her death the plaintiffs, as heirs at law of John J. West, brought this suit to recover the property and to have the sheriff's deed canceled as a cloud upon their title. Mc-

Whorter filed an answer to the petition, denying its material allegations, and specially setting up, by way of cross-bill, that on January 1, 1874, John J. West, being seized of the land in controversy, conveyed the same in fee simple to the defendant, with warranty of title. Thereafter John J. and Elvira West repurchased the same under a bond for title, giving their notes therefor, and while in possession thereof sought to have the land set apart as a homestead. The notes were sued upon to judgment in the county court of Greene county, in 1882, and the land was sold to satisfy the judgment. Thereafter, in December, 1882, the defendant again sold the land to John J. West, and, he failing to make any payments, on December 12, 1889, John J. and Elvira B. West executed to the defendant a release of all interest and title in the land, defendant agreeing that they might occupy so much of the place as they wished for their natural lives, after which the possession of the land and all rights therein was to belong to the defendant. At the March term, 1901, of Greene superior court, a decree was had in a suit to which Mrs. E. B. West was a party, fully setting up and establishing the agreement, and settling the title of the defendant in the land. Both John J. and Mrs. E. B. West being dead, the full and perfect title to the land is vested in the defendant. A demurrer to the answer was filed, after which the answer was amended to meet the demurrer, which amendment also was demurred to. The demurrer was overruled, and at the conclusion of the evidence the court, on motion, directed a verdict in favor of the defendant. The plaintiffs excepted.

*Noel P. Park* and *Lewis, Davison & Lewis,* for plaintiffs.

*Samuel H. Sibley,* for defendant.

HILL, J. (After stating the foregoing facts.) In the view we take of this case, the homestead set apart to John J. West, as the head of a family, on December 15, 1877, was void, whether it was applied for and set apart under the constitution of 1868 or that of 1877. The record shows that the application for a homestead was filed on December 4, 1877. The return of the county surveyor was made on December 14, 1877. The homestead was approved by the ordinary on December 15, 1877. By the act of 1876 (Acts 1876, p. 48), which was in force at the time the proceedings for the setting apart of a homestead now under review were had, the Code of 1873, § 2007, was so amended as to require the ordinary to set the hearing on the application at a date not less than twenty

nor more than thirty days from the date of the order of the ordinary to the surveyor, directing him to lay off the homestead of the applicant and make a survey of the same. The order to the surveyor in the record does not show the date it was rendered, but it could not have been granted prior to the application itself, which was filed on December 4; and as the homestead was approved on December 15 next thereafter, the hearing must of necessity have been set less than twenty days from the date the order was granted. In *Brady* v. *Brady*, 67 *Ga.* 368, it was held that where an ordinary had fixed a time and place for hearing an application for a homestead, and on the day set was absent from the county, and no provision for a continuance was made, he could not subsequently, without further notice or order, approve the application and grant the homestead. In the opinion (p. 377) it was said: "The jurisdiction of the setting apart and assignment of homesteads under the constitution of 1868 is conferred by statute law on the ordinary, and he must pursue the mode and order therein declared in the discharge of the duty thus imposed. When he deviates from that order, and undertakes to prescribe one to suit his own convenience, he is acting without authority of law, and his action is illegal and void." And see, *Reid* v. *Jordan*, 56 *Ga.* 282; *Mitchell* v. *Braswell*, 59 *Ga.* 532; *Fussell* v. *Dennard*, 118 *Ga.* 270 (45 S. E. 247). We hold that the setting of the hearing on the application and the approval of the homestead by the ordinary at a date earlier than he was by law authorized so to do constitutes a defect in the proceedings fatal to his jurisdiction, and that the approval and setting apart of the homestead was void. There being no valid homestead, the land was subject to levy and sale in 1882, and the defendant acquired a good title thereto as purchaser at the sheriff's sale under the levy made that year. There is nothing to show that John J. West at any time subsequently acquired title from the defendant; on the contrary, it appears that the title remained in the latter. It follows that the heirs at law of John J. West had no interest in the land after his death and that of his wife and the arrival at age of his minor children, and the court committed no error in directing a verdict for the defendant.

*Judgment affirmed. All the Justices concur, except Atkinson, J., absent.*